TAM:SRC:mel:2003V00934

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS HENRY THORNTON,    :
        Plaintiff     :  No. 1:CV-00-1590
                    :
        v.          :  (Kane, J.)
                    :
MR. LINDSEY, Associate Warden, :
et al.,                :  Filed Electronically
        Defendants    :

### BRIEF IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

This is a <u>Bivens</u> action initiated by former inmate Douglas Henry Thornton who alleges he was assaulted by "unknown officers" in the Special Housing Unit and dining room at USP Lewisburg in March 2000. He further asserts that false incident reports were filed against him and that the Disciplinary Hearing Officer (DHO) made untrue statements in his DHO reports. Named as defendants are Cam Lindsey, former Associate Warden; J. Morin, former Lieutenant; and D. Emory, Disciplinary Hearing Officer (DHO).

Thornton claims that, on March 3, 2000, "unknown officers" assaulted him while he was "hand and feet cuffed to a bed in the Special Housing Unit." Compl., p. 2. Thornton denies assaulting Associate Warden Lindsey in the dining room the same day, stating "the cameras will show that I was the one assaulted . . ." <u>Id.</u>

Thornton next claims Lt. Morin filed two fabricated incident reports against him, causing him to be placed in disciplinary segregation and losing good time. Id. Finally, he contends that DHO Emory "refused to acknowledge BOP violation and made untrue statement in DHO reports, calling me a homosexual." Id.

As relief, he requests that the incident reports be expunged, that his good time be restored and that he receive medical treatment for his injuries.[1] He also asks that defendants be ordered not to destroy any evidence and seeks $10 million in damages.

A motion to dismiss and for summary judgment has been filed. Defendants submit that because Thornton has failed to exhaust his administrative remedies regarding any of the issues raised in his complaint, they are entitled to judgment in their favor.[2]

---

[1] Thornton was released from Bureau of Prisons custody on May 16, 2003. Therefore, his requests for injunctive relief should be dismissed as moot. See Rhodes v. Stewart, 488 U.S. 1 (1988); Reimers v. State of Oregon, 863 F.2d 630 (9th Cir. 1988); Moore v. Theiret, 862 F.2d 148 (7th Cir. 1988).

[2] In light of Ray v. Kertes, 285 F.3d 287, 293-97 (3d Cir. 2002), holding that the failure to exhaust administrative remedies is an affirmative defense, and Robinson v. Johnson, 313 F.3d 128, 135-37 (2002), holding that this defense, if not raised in an answer, should be raised at the first available opportunity, we are raising exhaustion at this time so as to promote judicial economy. See Robinson, 313 F.3d at 137. Accordingly, we reserve the right to address the merits of Thornton's claims or any other applicable defenses if unsuccessful on this motion.

<u>**Statement of Facts**</u>

A.    <u>**The March 1, 2000 and March 3, 2000 Incidents.**</u>

On March 3, 2000, at approximately 6:45 a.m., during the breakfast meal, staff observed Thornton and two other inmates engaged in a physical altercation. Exh. 1 (Emory Decl.), p. 10 (DHO Report on Incident Report Number 772556). Staff called for assistance and responding staff attempted to separate the three inmates. While staff were attempting to separate and restrain the inmates, Thornton became combative by physically struggling and resisting staff who were attempting to restrain him. It was necessary for staff to physically carry Thornton to the Special Housing Unit. Subsequently, Thornton was placed in four-point hard restraints due to his combative behavior. Thornton was seen by Health Services staff and treated for small cuts on his forehead, left hand and lower lip area. <u>Id.</u>, p. 10.

Defendant Lindsay, then Associate Warden of Operations, responded to the assistance call for the fight in the dining hall and broke his left forefinger while attempting to restrain Thornton. <u>Id.</u> at 4-5 (DHO Report on Incident Report Number 773788). <u>See also</u> Exh. 2 (Lindsay Decl.), ¶¶ 3-5. Subsequent investigation of this fight revealed that Thornton and one of the other inmates involved in the dining room incident, inmate Gregory Taylor, had a previous altercation on their job site on March 1, 2000, which had gone undetected by staff. Exh. 1, p. 5.

Because the institution was locked down soon thereafter for an unrelated incident, the breakfast meal on March 3, 2000, was the first opportunity that Thornton had to encounter this inmate since the work site altercation two days before.  <u>Id.</u> at 10.

Thornton subsequently received a disciplinary incident report for Fighting (Code 201) for the work site altercation he was involved in on March 1, 2000.  <u>Id.</u> at 8.  He also received an incident report for Conduct which Disrupts, Most Like Assault (Code 101), for continuing to fight with staff in the dining hall on March 3, 2000, resulting in the injury to a staff member.  <u>Id.</u> at 3.  Defendant Morin, then a Lieutenant assigned to the Special Investigative Agent's Office, authored the incident reports.  <u>See</u> Exh. 3 (Morin Decl.), ¶¶ 3-4).

On May 9, 2000, Thornton had his DHO hearing on the Fighting charge and was found to have committed the prohibited act for which he was charged.  <u>See</u> Exh. 4 (Cunningham Decl.), ¶ 4.  On June 14, 2000, Thornton had his DHO hearing on the Assault\Conduct which Disrupts charge and was found to have committed the prohibited act for which he was charged.  <u>See</u> Exh. 1, pp. 3-7.

On May 22, 2000, Thornton appealed the May 9, 2000, DHO decision finding that he committed the prohibited act of Fighting.  Among other complaints, Thornton claimed the incident report should be expunged because he was on strong medication at

the time the incident report was delivered and also claimed he did not receive a detention order when he was placed in the Special Housing Unit.  Exh. 4, p. 3 (Regional Director's Response).  The Northeast Regional Office partially granted Thornton's appeal to the extent the disciplinary action was remanded back to USP Lewisburg for the incident report to be re-written and a DHO re-hearing.  Id.  Ordering a rewrite of the incident report and/or a rehearing is an option provided for at 28 C.F.R. § 541.19.

Thornton appealed the Regional Director's decision to give him a rehearing to the Central Office (although it is not clear why he appealed as he already had been granted a rehearing). Id., p. 4 (Central Office Response).  The Central Office concurred with the Regional Office's decision to allow a rehearing of the Fighting charge.  Id.

On July 12, 2000, Lt. Morin completed the re-write of the incident report charging Thornton with Fighting (Code 201), for the March 1, 2000, incident.  Exh. 1, p. 8.  The DHO rehearing of the Fighting charge occurred on July 18, 2000.  Id.  The DHO found Thornton had committed the prohibited act for which he was charged.  Id., pp. 8-12.

B.    **Exhaustion of Administrative Remedies.**

The Bureau of Prisons has a three level administrative remedy process which is a method by which an inmate may seek

5

formal review of a complaint related to any aspect of his
confinement if less formal procedures have not resolved the
problem.  The procedure is codified at 28 C.F.R.§ 542.10, et seq.
This process involves the filing of a request for administrative
relief (BP-9) to the Warden of the institution where the inmate
is confined.  In the event the inmate is dissatisfied with the
Warden's response, he may file an appeal (BP-10) to the Regional
Director.  The final step in the administrative remedy process is
an appeal to the General Counsel (BP-11).  See 28 C.F.R. Part
542, subpart B.  A decision by the Bureau of Prisons is not
final, and hence, not reviewable until relief has been denied by
the General Counsel's Office.  28 C.F.R. § 542.15; Exh. 4
(Cunningham Decl.), ¶ 2.

    Appeals of DHO actions are one of the few exceptions to the
Bureau's administrative remedy process, which are filed directly
to the Regional Counsel's Office, and thus, not reviewed at the
institution level.  Id.

    A review of Thornton's administrative remedy log reveals
that he appealed the May 9, 2000, DHO hearing conducted for
Fighting.  Id., ¶ 6.  The Northeast Regional Office granted his
appeal to the extent he was provided with a rewrite and rehearing
of the incident report for the March 1, 2000, Fighting charge.
Thornton properly filed a further appeal of this situation with

the Central Office, even though his Regional level request had been properly granted.  Id.

In the Central Office's response, the Regional decision to offer the inmate a rehearing was upheld.  The Central Office's response clearly informed Thornton that if he wished to appeal the July 18, 2000, rehearing, he must "reinstate any contentions you have through the submission of a Regional Administrative Remedy Appeal (BP-10) to the Regional Director."  Exh. 4, p. 4. Thornton failed to file any new appeal of the July 18, 2000, DHO rehearing on the Fighting charge.  Exh. 1, ¶ 5.

Thornton did file a Regional Office level appeal on the June 14, 2000, DHO hearing on the Assault/Conduct which Disrupts charge, arising out of the dining room incident.  Id., ¶ 6.  The request for remedy was denied by the Regional Office on July 7, 2000.  Thornton failed to appeal that denial to the Central Office.  Id.  He therefore failed to exhaust his available administrative remedies on both the Fighting and Assault/Conduct with Disrupts incident reports, or any other specific allegations against DHO Emory.

Additionally, Thornton failed to file any requests for administrative remedy regarding Lt. Morin fabricating incident reports, Associate Warden Lindsay and his injured finger, or any allegations regarding being assaulted in the Special Housing Unit.  Id., ¶ 7.

**Question Presented**

Should defendants' motion to dismiss and for summary judgment be granted as Thornton has failed to exhaust his administrative remedies?

**Argument**

Under the Prison Litigation Reform Act (hereinafter "PLRA"), a federal prisoner is required to exhaust his administrative remedies before filing a complaint. Specifically, the PLRA provides that ". . . [N]o action shall be brought with respect to prior conditions under . . . any . . . Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Third Circuit has held that, "no action shall be brought in federal court until such administrative remedies as are available have been exhausted." Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). As such, inmates are required to exhaust their "available administrative remedies prior to initiating a prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law." Fortes v. Harding, 19 F. Supp. 2d 323, 325 (M.D. Pa. 1998).

The Supreme Court in Porter v. Nussle, 534 U.S. 516 (2002), held that an inmate must exhaust his available administrative remedies before bringing any type of suit. In Porter, an inmate brought directly to court, a complaint which alleged he was

assaulted by several corrections officers and told they would kill him if he reported the beating. Id. at 520-21. The inmate bypassed the exhaustion provisions established by the PLRA and filed suit pursuant to 28 U.S.C. § 1983. The complaint was filed days before the statue of limitations expired, which clearly prompted him to bypass the administrative remedy requirement. Id. The Supreme Court concluded that, "[t]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532.

The exhaustion doctrine has been developed to facilitate judicial review by allowing the appropriate agency to develop a factual record and apply its expertise, to conserve judicial resources, and to allow the defendant agency the first opportunity to correct its own errors. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). If a federal prisoner fails to follow the detailed procedures and guidelines to exhaust his administrative remedies, the action cannot be maintained. Furthermore, under settled Third Circuit law, an inmate who files a Bivens action seeking more than just money damages must exhaust his administrative remedies. Young v. Quinlan, 960 F.2d 351, 356 n.8 (3d Cir. 1992); Lyons v. United

<u>States Marshals Service</u>, 840 F.2d 202 (3d Cir. 1988); <u>Veteto v.</u>
<u>Miller</u>, 794 F.2d 98, 100 (3d Cir. 1986).

In the present case, as discussed above, <u>see</u> text, <u>supra</u> at
pp. 5-7, Thornton has not completed the administrative remedy
requirements set forth in 28 C.F.R. §§ 542.10 - 542.16.  *See*
<u>Irwin v. Hawk</u>, 40 F.3d 347, 348 (11th Cir. 1994) ("When Congress
prescribes an administrative remedy, application of the
exhaustion requirement is not a matter of judicial discretion").

In his complaint, in response to the question, "Have you
filed a grievance concerning the facts related to this
complaint?", Thornton indicates "Yes".  The following line
reads, "If the answer is no, explain why not".  Even though his
answer was "Yes", Thornton writes, "I have not received answers
to some grievance I filed on this matter see attached receipt".
Compl., p. 1.

As attachments, Thornton includes a variety of Requests for
Administrative Remedies he filed, along with timely responses on
a variety of issues, some dealing with issues he raises in this
current complaint and some other, unrelated issues, not
referenced at all in this civil action.  The remedy requests and
responses that Thornton attached indicate he filed remedy
requests at the institution, Regional, and Central Office level,
and that he was successful on at least two occasions in being
granted the relief he was seeking.  Thornton provided no

attachment to show he did not receive an answer to a grievance he filed.  On the contrary, he provides voluminous evidence that he did, in fact, frequently access the administrative remedy process and receive proper responses.

The record before the Court establishes that although Thornton is familiar with the administrative remedy procedure and that he has successfully filed various administrative remedies regarding issues unrelated to this civil action, he has not exhausted any of the allegations of his complaint.  See Exh. 4. Therefore, in light of Thornton's failure to exhaust the administrative remedy procedure, defendants' motion should be granted.[3]

---

[3] Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  In Celotex, the Court held that "Rule 56(e)... requires that the non-moving party go beyond the pleadings by [his] own affidavits, or by 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'".  Id. at 324.  Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex, 477 U.S. at 325.

## Conclusion

In that Thornton has failed to exhaust his administrative remedies, defendants' motion to dismiss and for summary judgment should be granted.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


s/ Stephen R. Cerutti
STEPHEN R. CERUTTI
Assistant U.S. Attorney
Atty. I.D. No. 90744
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Phone: 717-221-4482
Fax: 717-221-2246

Dated:  December 16, 2003

12

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS HENRY THORNTON,           :
       Plaintiff         :   No. 1:CV-00-1590
                         :
       v.                :   (Kane, J.)
                         :
MR. LINDSEY, Associate Warden,    :
et al.,                           :   Filed Electronically
       Defendants        :

CERTIFICATE OF SERVICE BY MAIL

     The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

     That on December 16, 2003, she served a copy of the attached

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Douglas Henry Thornton
1014 David Hill Avenue
Baltimore, MD  21213

                              s/ Michele E. Lincalis
                              MICHELE E. LINCALIS
                              Paralegal Specialist