TAM:SRC:mel:2003V00934

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS HENRY THORNTON,    :
           Plaintiff     :   No. 1:CV-00-1590
                      :
           v.         :   (Kane, J.)
                      :
MR. LINDSEY, Associate Warden,  :
et al.,                :   Filed Electronically
           Defendants   :

## EXHIBITS IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Respectfully submitted,

THOMAS A. MARINO
United States Attorney


s/ Stephen R. Cerutti
STEPHEN R. CERUTTI
Assistant U.S. Attorney
Atty. I.D. No. 90744
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Phone: 717-221-4482
Fax: 717-221-2246

Dated:   December 16, 2003



EXHIBIT
1

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Douglas Thornton,                     )
  Plaintiff                          )
                              )
                              )
v.                                    )          No. 1:CV-00-1590
                              )
Associate Warden Lindsay, etal        )
  Defendants                         )
                              )

## DECLARATION OF D. EMORY

I, D. Emory, hereby state:

1.    I am presently employed by the Federal Bureau of Prisons, as the Disciplinary Hearing Officer at the United States Penitentiary (USP) at Lewisburg, Pennsylvania..    I am familiar with the above referenced case in which inmate Thornton, Reg. No. 37461-118.

2.    With regard to me conducting his DHO hearing/re-hearing with relating to the March 1, 2000, Fighting charge, and the March 3, 2000, Assault/Conduct which Disrupts, inmate Thornton claims I refused to acknowledge BOP violation and made untrue statement in DHO reports, calling me a homosexual".

3.    Attached are true and accurate copies of the DHO reports for the two incidents described above.    Also attached is a true and accurate copy of the handwritten statement which inmate Thornton provided to me.

4.    In each case, the plaintiff was afforded  adequate written notice of the charges against him;  an opportunity to call witnesses and present documentary evidence in his own defense; and  a written statement of the evidence I relied on in reaching my conclusions. I properly documented inmate Thornton's statement regarding his opinion that the incident reports were false.

5.    With regard to inmate Thornton's allegation that I called him a homosexual.  This is inconsistent with the actual statement in the DHO report which I documented the plaintiff's assertion that he was not a homosexual.    The only other reference to homosexuality is in Section V of the DHO report on the rehearing of the Fighting charge where I documented information received through inmate interviews as part of the SIS investigation which I considered as part of my decision that inmate Thornton had committed the prohibited act for which he was charged.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.

D. Emory
Disciplinary Hearing Officer
United States Penitentiary
Lewisburg, Pennsylvania

**DISCIPLINE HEARING OFFICER REPORT**
U.S. DEPARTMENT OF JUSTICE

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | USP, Lewisburg | INCIDENT REPORT NUMBER | | | 773788 |
|---|---|---|---|---|---|
| INMATE NAME | THORNTON, Douglas | REG NO | 37461-118 | UNIT | 1 |
| DATE OF INCIDENT | 3-3-00 | DATE OF INCIDENT REPORT | | | 4-14-00 |
| OFFENSE CODE(S) | 199/101 | | | | |
| SUMMARY OF CHARGES | Conduct which Disrupts, most like Assault, Code 101 | | | | |

**I.   NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) 5-29-00 at (time) 1818 (by staff member) D. Shaw

B. The DHO Hearing was held on (date) 6-14-00 at (time) 0930

C. The inmate was advised of his/her rights before the DHO by (staff member):

P. Yakubick on (date) 5-30-00 and a copy of the advisement of rights form is attached.

**II.   STAFF REPRESENTATIVE**

| A. Inmate waived right to staff representative. | Yes: | | No: | X |
|---|---|---|---|---|

B. Inmate requested staff representative and   N/A   appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:   N/A

| D. Staff representative | M. Houser | was appointed. |
|---|---|---|

E. Staff representative statement:

Mr. Houser indicated he discussed the case with the inmate and the inmate made no specific request. He wants the DHO to consider the written document he has submitted to the DHO.

**III.   PRESENTATION OF EVIDENCE**

| A. Inmate admits | | denies | X | the charge(s). |
|---|---|---|---|---|

B. Summary of inmate statement:

The inmate indicated he understood his rights and was ready to proceed with the hearing. He had one document for the DHO to consider. The inmate testified he is not guilty. He told me (DHO) to look at the camera. I advised the inmate in advance of the hearing that I did view the video surveillance of the dining room on the day of the incident. Specifically, after looking at the camera I was unable to discern with any certainty what his actions were, as he had been taken to the ground and there were numerous staff in the area. Accordingly, there was no clear vantage point from the camera to depict particularly what he did subsequent to being assaulted by two other inmates. He indicated he didn't really do nothing. The only thing he remembers is falling out of his chair, nothing else. He had no evidence for the DHO to consider. The inmate made no complaints of procedural errors during the hearing.

C. Witness(es):

| 1. The inmate requested witness(es). | Yes: | | No: | |
|---|---|---|---|---|

00003

DISCIPLINE HEARING OFFICER REPORT                                    BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                                   FEDERAL BUREAU OF PRISONS

| 2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.) |
| N/A |

| 3. The following persons requested were not called for the reason(s) given. |
| N/A |

| 4. Unavailable witnesses were requested to submit written | Yes | | No | | N/A | X |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

Written statement of inmate; Memo of Morin dated 4-14-00; Memoranda of Lindsay, Cope, Sniezek, Densberger, Preisch, Peterson, Sola, Recla and Rothermel dated 3-3-00; Injury assessment forms; Photographs; Video surveillance photographs; Handwritten statement of Inmate Thornton

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

## IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. |
| | B. The following act was committed: | |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

The DHO finds Thornton guilty of the offense of Conduct which Disrupts, most like Assault, Code 101. This decision is based upon the written account of the reporting officer which indicates at 1:30 p.m. on 4-14-00, an SIS investigation concluded that on 3-3-00 at approximately 6:45 a.m., Associate Warden Lindsey was attempting to gain control of Inmate Thornton during a fight in the dining hall. While Thornton was pinned to the ground by Mr. Lindsey, Thornton continued to struggle even after numerous staff attempted to control the situation. During the struggle, Mr. Lindsey felt a shooting pain in his left index finger. This injury was a direct result of Thornton struggling with staff. Upon reporting to the Urgent Care Room after the right, Mr. Lindsey was examined and an x-ray of his left index finger was taken and Mr. Lindsey was treated for a broken left index finger.

Also relied upon by the DHO are the documents listed in the Documentary Evidence Section which support and corroborate the reporting officer's account of the incident. A review of the documentation in this case reveals that on March 3, 2000, at approximately 6:45 a.m, while serving the breakfast meal, staff observed Inmates Thornton, Taylor #18115-018 and Vieux #18140-018 engaged in a physical altercation. Assistance was called and responding staff attempted to separate the three inmates. While staff were attempting to separate and restrain the inmates, Thornton became combative by physically struggling and resisting staff who were attempting to restrain him. At that point it became necessary for staff to carry Thornton to the Special Housing Unit. Subsequently, Thornton was placed in four point hard restraints due to his combative behavior.

Inmate Thornton was examined and treated for small cuts on his forehead, left hand and

00004

DISCIPLINE HEARING OFFICER REPORT                                    BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                                      FEDERAL BUREAU OF PRISONS

lower lip area.  Inmate Vieux was escorted to the Health Services Unit and treated for a small cut on his left wrist.  Inmate Taylor was examined and no injuries were noted.

The investigation in this case reveals that the assault on Thornton was the result of an altercation he had previously on 3-1-00 with Inmate Taylor in the Mechanical Services Department which was undetected by staff.

As a result of this incident, Mr. Lindsey sustained a broken finger.  According to the memo of Mr. Densberger in this case, he responded to the incident.  He observed numerous staff members attempting to restrain Thornton along the west wall of the dining room.  He obtained a set of leg irons from Control Center and placed them on the struggling Thornton and he was carried out of the dining room.  According to Mr. Densberger, Thornton was carried to the SHU holding cell and placed in four point restraints due to his continual struggling with staff.

I have considered the written statement supplied by the inmate in this case which indicates in pertinent part that he didn't assault anyone.  He further indicates he did not receive a detention order, nor was he advised that the incident report was being forwarded for consideration for prosecution.  He indicates there was a delay in receiving the incident report.  The DHO notes the inmate has raised no contentions whatsoever how these delays in any prohibited him from presenting a defense in this action.  The record reveals the case was referred for criminal prosecution on 3-3-00 and was released for administrative processing on 5-29-00.  According to policy, staff cannot process incident reports while they are pending criminal prosecution unless given permission by the U. S. Attorney's Office.  Again, I find no prejudice from the delay of the delivery or the processing of the report.  The referral to the criminal prosecutors in this case tolls the time limitations in the processing of the report.

After reviewing the actions in this case, I believe they best described the conduct of Conduct which Disrupts, most like Assault, Code 101.  While Thornton was initially assaulted by two other inmates, staff attempted to break up the altercation.  The other two inmates who were the assailants complied with staff.  Thornton continued to fight vigorously with staff and it resulted in the injury to a staff member.  In addition to the inmate causing injury to staff, it is also noted that this happened in the main dining room during the feeding of mainline.  This in and of itself could lead to a major disruption in the institution had other inmates decided to involve themselves in the misconduct.  Specifically, after staff attempted to disengage Thornton from other inmates, he continued to fight with them (staff).  He was fully combative to the point where when he was removed from the dining room, he had to be taken down and placed and four point restraints.  Had other inmates come to his aid, it would have jeopardized the lives and safety of all staff and other inmates in the dining room, thereby placing the lives of staff and inmates alike at risk.  The greater weight of the evidence supports this finding.

## VI. SANCTION OR ACTION TAKEN

CODE: 199/101

Disciplinary Segregation: 60 days
Disciplinary Transfer
Loss of Commissary Privilege: 180 days
Loss of Telephone Privilege: 180 days
Loss of Visiting Privilege: 180 days

## VII. REASON FOR SANCTION OR ACTION TAKEN

The rationale for the sanctions imposed in this case is to punish the inmate for his misconduct which is viewed as having an adverse affect on the security and good order of the institution.  I believe that stringent sanctions, to include the loss of privilege, are the only viable sanctions which are significant enough to curb the inmate's future

00005

DISCIPLINE HEARING OFFICER REPORT                                    BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                                            FEDERAL BUREAU OF PRISONS

misconduct.  No other sanctions are seen to be effective enough to facilitate this task.

VIII.  APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence
relied on, action and reasons for the action.  The inmate has been advised of his right
to appeal this action within 20 calendar days under the Administrative Remedy Procedure.
A copy of this report has been given to the inmate.

| | Yes | X | No | | |

IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| D. Emory | | 6-15-00 |

| Report delivered to inmate by: | DATE | TIME |
|---|---|---|
| M. Inch | 6/16/00 | |

(This form may be replicated in WP)                    Replaces BP-304(52) of JAN 88

00006

Douglas H. Thornton
Reg No# 37461-118
Special housing unit 236
USP Lewisburg Pa.

Date June 4 2000

To; Discipline hearing officer
Federal bureau of Prisons,
United States Penitentiary Lewisburg Pa.

Subject. DHO, Statement, Incident report Number 773788

Re;

    doing the incident of march 3, 2000, I do not recall assaulting anyone. I was being assaulted by two inmate while I was siting down eating my morning meal. I do recall being hit or punch on the left side of my head, I was in a days from this punch to my head and fell out of my set. Nothing was clear to me after that point. I did not receive a copy of this incident report untill may 29, I did not receive a detention order or a investigation notice or order at Cited in Title 28 CFR Part 541-14.2. 541.20. 541.16. 541.19. I did not Star the incident of march 3, 2000, I did not at any time with a clear mind try to cause any one any harm see Title 28, CFR. part 541.11. I hope that the cameras in the inmate dining hall will show what I did recall as true.

C.C.

00007

# DISCIPLINE HEARING OFFICER REPORT
## U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94

**FEDERAL BUREAU OF PRISONS**

## REHEARING

| INSTITUTION | USP, Lewisburg | | INCIDENT REPORT NUMBER | | | 772556 |
|---|---|---|---|---|---|---|
| INMATE NAME | THORNTON, Douglas | | REG NO | 37461-118 | UNIT | 1 |
| DATE OF INCIDENT | 3-3-00 | | DATE OF INCIDENT REPORT | | | 7-12-00 |
| OFFENSE CODE(S) | | 201 | | | | |
| SUMMARY OF CHARGES | | Fighting | | | | |

### I.  NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on
(date)  7-12-00         at (time)  1930     (by staff member)  T. Preisch

B. The DHO Hearing was held on (date)      7-18-00       at (time)   1315

C. The inmate was advised of his/her rights before the DHO by (staff member):

P. Yakubick                          on (date)      7-13-00          and a copy
of the advisement of rights form is attached.

### II.  STAFF REPRESENTATIVE

| A. Inmate waived right to staff representative. | Yes: | | No: | X |
|---|---|---|---|---|

B. Inmate requested staff representative and   Mr. Byerly                      appeared.

C. Requested staff representative declined or could not appear but inmate was advised of
option to postpone hearing to obtain another staff representative with the result
that:  N/A

| D. Staff representative | N/A | was appointed. |
|---|---|---|

E. Staff representative statement:

Mr. Byerly indicated the inmate has submitted a written statement to the DHO.  He
indicates he never received his copy of the incident report.  He claims he never had a
fight with Taylor.  The inmate made no request of him.

### III.  PRESENTATION OF EVIDENCE

| A. Inmate admits | | denies | X | the charge(s). |
|---|---|---|---|---|

B. Summary of inmate statement:

The inmate indicated he understood his rights and was ready to proceed with the hearing.
He had one document for the DHO to consider.  The inmate testified the report is false.
He never received the pink copy of the report.  He did receive the blue copy from the
UDC.  He indicated the first incident report is inconsistent with the rewrite.
Specifically, the line that indicates in the re-write that Thornton told Taylor that he
felt uncomfortable around him, when in the first report it was vice versa.  I read the
original incident report and compared it with the second incident report and the SIS
Report.  I indicated that the one sentence is inconsistent, but I advised the inmate
that the issue at stake is whether or not he had a fight with Taylor, that was the
important issue.  He indicated he did not, but it thought it was extremely relevant.  I
advised the inmate that I believed the notice of the report was clear to the extent that
he had to defend himself against fighting, not what was said.  Specifically, that he
(Thornton) tried to punch Taylor with a closed fist and then Taylor punched him.  The
inmate indicated he did not have a fight with Taylor.  There is no viable evidence to

00008

DISCIPLINE HEARING OFFICER REPORT
U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94
FEDERAL BUREAU OF PRISONS

support the finding that he had a fight with Taylor, other than Taylor's admission. Taylor is only saying that because he wouldn't help him with legal work. He reiterated numerous times that he was not a homosexual. He indicated he and Taylor did work in close proximity with each other in adjoining shops. He did talk and sometimes they argued. He indicated that I mis-stated some of his comments in the earlier DHO Report. The inmate made no additional complaints of procedural errors during the hearing.

C. Witness(es):

| 1. The inmate requested witness(es). | Yes: | X | No: | |

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

N/A

3. The following persons requested were not called for the reason(s) given.

N/A

| 4. Unavailable witnesses were requested to submit written | Yes | | No | | N/A | X |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

Memo of Morin dated 4-14-00; Memoranda of Lindsay, Cope, Sniezek, Densberger, Preisch, Peterson, Scla, Recla and Rothermel dated 3-3-00; Injury assessment forms; Photographs; Video surveillance photographs; Handwritten statement of Inmate Thornton

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

## IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. |
| | B. The following act was committed: | |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

The DHO finds Thornton guilty of the offense of Fighting. This decision is based upon the written account of the reporting officer which indicates this is a rewrite of an incident report dated 4-14-00. At approximately 1:30 p.m. on 4-14-00, an SIS investigation concluded that on 3-1-00 at approximately 12:00 p.m., while in the Mechanical Services area, Inmates Gregory Taylor #18115-018 and Thornton were involved in a fight. Specifically, Thornton had approached Taylor. According to the incident report, Thornton had told Taylor that he (Taylor) made him (Thornton) feel uncomfortable. Thornton had then tried to punch Taylor with a closed fist. Taylor then punched Thornton with a closed fist and told Thornton to "check in" and to get off the compound. According to the reporting officer, this conclusion is based upon Taylor and Thornton's own admission to fighting during an SIS investigation.

Also relied upon by the DHO are the documents listed in the Documentary Evidence Section which support and corroborate the reporting officer's account of the incident. Also relied upon by the DHO is the inmate's written statement to the DHO. In pertinent part,

00009

he indicates he did not receive the pink copy of the report. This is refuted by Lines 14, 15 and 16 of the incident report which indicates that Lt. Preisch delivered a copy of the rewritten report at 7:30 p.m. on 7-12-00. Considering arguendo that the inmate did not get a copy of the report as stated by the investigating lieutenant, he has readily admitted to receiving a copy of the report on 7-13-00 which contains the same information which the pink copy of the rewrite would have. Accordingly, he had it in his hands 24 hours in advance of the DHO hearing. He also indicates he did not admit to the SIS Lt. that he was involved in a fight. He also indicates there are inconsistencies between the first incident report and the second. He complains that he was not told the incident report was sent to the FBI and he did not get a detention order. The inmate has failed to articulate how either of the later would prejudice his right to a fair and impartial hearing before the DHO. I find no evidence that there is even if his allegations were true. He also indicates he stopped associating with Taylor, not that Taylor stopped associating with him and it was for legal reasons. I do acknowledge that there is an inconsistency in one line of the incident report from the previous incident report. That line rewritten in the second report read that Inmate Thornton told Taylor that he (Taylor) made him (Thornton) feel uncomfortable. While this is inconsistent, it is not what the inmate has been charged with. He has not been charged with uttering anything threatening or any other malicious statement. Rather, he has been charged with the offense of Fighting. I believe the incident report as rewritten does provide him with clear enough notice of the charges that he had to defend himself against the allegation that on 3-1-00 at approximately Noon that he had a fight with Taylor in the Mechanical Services Department. The inmate readily admits that he and Taylor worked in adjacent shops and often talked and sometimes argued. The record reveals that Thornton attempted to punch and Taylor punched Thornton with a closed fist. This amounts to fighting. The record in this case reveals that on 3-3-00 at approximately 6:45 a.m. while serving the breakfast meal, staff observed Thornton, Taylor and Vieux engaged in a physical altercation. Assistance was called and responding staff attempted to separate the three inmates. While staff were attempting to separate and restrain the inmates, Thornton became combative by physically struggling and resisting staff who were attempting to restrain him. At that point it became necessary for staff to carry Thornton to the Special Housing Unit. Subsequently, Thornton was placed in four point hard restraints due to his combative behavior.

Inmate Thornton was examined and treated for small cuts on his forehead, left hand and lower lip area. Inmate Vieux was escorted to the Health Services Unit and treated for a small cut on his left wrist. Inmate Taylor was examined and no injuries were noted. Inmates Taylor and Vieux were subsequently placed in the Special Housing Unit.

Subsequently, interviews were conducted of inmates. During the interview of Taylor, he readily admitted his assault on Thornton on 3-3-00. He indicated this was precipitated based upon the fact that on 3-1-00, after he returned from lunch in Mechanical Services, Thornton had approached him. Conversation took place referencing the fact that Thornton had made Taylor feel uncomfortable when they were around each other. Thornton then punched Taylor and Taylor punched Thornton. Taylor indicated they had a fight and he told Thornton to "check in" and get off the compound. Taylor stated that after the fight, the institution had been placed into lockdown due to a separate incident. Taylor stated that the institution opened back up 3-3-00. He went to the dining room and saw Thornton seated there. Taylor stated he approached Thornton in the dining room and told him he had to "check in" and get off the compound. Thornton then told Taylor to make him "check in".

On 3/17/00 Thornton was interviewed. In relation to the 3-1-00 incident, he indicated he had words of the afternoon of 3-1-00 in Mechanical Services with Taylor. Thornton stated Taylor had called him a "rat" because he (Thornton) had talked to the Regional Office people that had been here at U.S.P. Lewisburg. Taylor had also told Thornton that he (Thornton) was "soft" for wanting to enroll in the CODE Program. Thornton stated that right after that conversation, he and Taylor had gotten in a fight. The inmate has categorically denied ever making this admission to Lt. Morin. I find no reason to disbelieve Lt. Morin's assertions in this case as to what was said during the

DISCIPLINE HEARING OFFICER REPORT                                    BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                                  FEDERAL BUREAU OF PRISONS

interview of Thornton. In fact, his statement as she as transcribed it coincides in part with the interview of Taylor. Statements of Taylor in this case have been against his own self-interest and he has been disciplined as a result of them. I do not believe Taylor would make such statements lightly knowing he would be disciplined for them. He would not place himself in jeopardy just to get back at Thornton as Thornton has indicated.

A review of the investigatory report in this case reveals that on 3-3-00, mass interviews were conducted in "A", "B", "C" and "D" Blocks. Information received through mass interviews revealed that Thornton was a homosexual and had been badgering Taylor for sex, and that Taylor and Thornton had been involved in a fight in the Mechanical Services area on 3-1-00. Inmates interviewed also expressed a strong dissatisfaction toward Thornton's homosexual activities. In view of the facts in this case, I believe a fight did occur in Mechanical Services on 3-1-00 between Taylor and Thornton. As previously indicated, Taylor made an admission against self-interest which caused him to receive another incident report for misconduct which staff was not even aware of at the time of the 3-3-00 incident. Credence is further given to this position based upon interviews taken from the general population on the cell side of the institution. Specifically, it was common knowledge with inmates that Thornton had made homosexual advances toward Taylor and this was the direct result of the altercations on 3-1-00 and 3-3-00. Inmate Taylor's admission are also corroborated by a statement taken by Lt. Morin of Thornton in which he self-admitted to a fight on 3-1-00. I believe Inmate Taylor's assessments to be correct and honest, accepting responsibility for his misconduct. Whereas, Thornton is trying to extricate himself from any liability in this matter. Additionally, as indicated in my previous DHO Report, the manner in which Taylor and Vieux assaulted Thornton on 3-3-00 tells me two specific things. One, it was a retaliatory act and two, they did it in front of staff so the situation would not get so far out of hand that someone would get seriously hurt. After reviewing the evidence in its entirety, I find nothing to dissuade my earlier decision in this case. I believe Thornton and Taylor did have a fight in Mechanical Services on 3-1-00. As for the inmate's complaints as set forth in his oral testimony and through his written documentation, I find them to be all self-serving and only as a means to attempted to extract himself from responsibility for his misconduct in this case. The greater weight of the evidence supports the finding the inmate is guilty of Fighting.

## VI. SANCTION OR ACTION TAKEN

CODE: 201

Forfeit Statutory Good Time: 60 days
Disciplinary Segregation: 30 days (already served)
Disciplinary Transfer
Loss of Commissary Privilege: 90 days

## VII. REASON FOR SANCTION OR ACTION TAKEN

The rationale for the sanctions imposed in this case is to punish the inmate for his misconduct which is viewed as having an adverse affect on the security and good order of the institution, and to reaffirm the sanctions previously imposed at the original hearing in this case. I believe that stringent sanctions, to include the loss of privilege, are the only viable sanctions which are significant enough to curb the inmate's future misconduct. No other sanctions are seen to be effective enough to facilitate this task.

00011

DISCIPLINE HEARING OFFICER REPORT                                      BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                                        FEDERAL BUREAU OF PRISONS

| VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate. | | | | |
|---|---|---|---|---|
| | Yes | X | No | |

| IX. DISCIPLINE HEARING OFFICER | | |
|---|---|---|
| Printed Name of DHO | Signature of DHO | Date |
| D. Emory | | 7-31-00 |
| Report delivered to inmate by: | DATE | TIME |
| M. Inch | 8/4/00 | |

(This form may be replicated in WP)                     Replaces BP-304(52) of JAN 88

00012

Douglas Henry Thornton
Reg No# 37461418 - 326
Disciplinary Segregation
Special Housing Unit
USP- Lewisburg Pa 17837.

Date July.13 - 2000

To; Discipline hearing Officer.
United States Penitentiary Lewisburg P

Subject; Statement to DHO pertaining to rewritten incident report 797330
          I was informed by the Northeast Regional office
that my appeal of the DHO decision in case 772556, Remedy ID
214286-R1 is partially granted. remanded to be rewritten and reissued
Dated July 6, 2000. On July 13, Mr Yakubick came to my cell
to procee with the UDC on a rewitten incident report. I
informed Counselor Yakubick. That I never received a copy of
the rewitten incident report that he is holding UDC. he ask me
about two times if I received a pink copy of the incident
report, I told him no one gave me anything. He stated that
the incident report was written mostly like the first one only
change was where the incident took place. I at the time of
writing to statement still have not received a copy of the
rewitten incident report, maybe later in the day I received a copy.
I stated to UDC. that I did not admitted to the SIS Lieutenant
that I was fighting any one on March 1, 2000. and the reasons
that inmate Gregory Taylor gave for this allege fight, between
him and I of march 1, 2000, and the reason or cause that he give
for the allege fight is a out right lie. About ever since —00013

DHO                          (2)                          IR- 797330

member that worked in mechanical services area. Know that Inmate Taylor had limited and O associated with each other everyday at work. Inmate Taylor used come to A-block to get food from me. I use to help inmate Taylor with law and legal research in the institution law library. I worked in mechanical services for almost a year and nearly every work day I and associated with inmate Taylor. This allege reason given that inmate Taylor did not wanted me around. SI was the one stop associating with inmate Taylor for legal reason. In the original DHO report etc. it was stated that inmate Taylor did not wanted me around him see DHO report 772556 page 4. now in the rewrite it said I told Taylor I feel uncomfortable about him... I just received the blue UDC copy of the rewritten incident report in the mail. I never received a lock up order. or and SIS investigation Note. I was not told that any part of this matter was sent to the FBI. The practice and procedure that was use in this Subject matter was in violation of Code of Federal Regulation title 28, part 42. Sections 541.16, 541.19, 541.20. etc. I file this statement for the record of the DHO files. Because of some untrue statements that was place in the original DHO report in this matter. See DHO report No# 772556. I will not appear before the DHO on this rewritten incident report. I am being suggested to discipline for a allege violation of BOP rules. But Staff are allow to disregard BOP rules that Governs Incident report. DHO hearing etc. I gave this statement to my staff rep to give to the DHO officer.

I

Remain

00014

EXHIBIT

2

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Douglas Thornton,              )
    Plaintiff                  )
                               )
v.                             )          No. 1:CV-00-1590
                               )
Associate Warden Lindsay, etal )
    Defendants                 )
                               )

## DECLARATION OF C. LINDSAY

I, C. Lindsay, hereby state:

1. I am presently employed by the Federal Bureau of Prisons, as the Warden of the Federal Correctional Institution (FCI) at Lompoc, California. During March 2000, I was employed at the Associate Warden (Operations) at the United States Penitentiary (USP) at Lewisburg, Pennsylvania.. I am familiar with the above referenced case.

2. With regard to me, inmate Thornton, Reg. No. 37461-118, claims he did not "assault" me in the USP Lewisburg inmate dining hall on March 3, 2000. He does not make any specific allegations against me.

3. On March 3, 2000, I was standing with other staff in the USP Lewisburg inmate dining hall, supervising the feeding of the breakfast meal. I observed an altercation break out among three inmates. I, along with other staff, responded and attempted to separate and restrain the inmates involved in the fight.

4. While I was attempting to restrain inmate Thornton, he became combative and continued to struggle. I felt a shooting pain in my left forefinger. Additional staff arrived and the inmates involved in the altercation were successfully separated and restrained, and removed from the dining hall.

5. After the incident, I was examined by a physician who diagnosed a broken left index finger.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.

_____          12.01.03
C. Lindsay, Warden                           Date

EXHIBIT
3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### MIDDLE DISTRICT OF PENNSYLVANIA

Douglas Thornton,                     )
  Plaintiff                          )
                               )
v.                           )      No. 1:CV-00-1590
                               )
Associate Warden Lindsay, etal        )
  Defendants                         )
                               )

## DECLARATION OF J. MORIN

I, Jacqueline M. Morin, hereby state:

1.    I am presently employed by the Federal Bureau of Prisons, as the Captain of the Federal Correctional Institution (FCI) at Butner, North Carolina. During March 2000, I was employed as a Lieutenant at the United States Penitentiary (USP) at Lewisburg, Pennsylvania. I am familiar with the above referenced case in which inmate Thornton, Reg. No. 37461-118.

2.    With regard to me, inmate Thornton claims I "fabricated" two disciplinary incident reports against him. Plaintiff claims he was "placed on Disciplinary Segregation and lost good time, etc" because of the incident reports.

3.    During March 2000, I was a Lieutenant assigned the duty of "Special Investigative Supervisor". This duty required me to conduct investigations on various incidents, such as inmate on inmate altercations. My conclusions regarding inmate Thornton's involvement in a March 1, 2000, fight on his job site, and another inmate on inmate altercation in the inmate dining hall on March 3, 2000, were based on a series of inmate interviews and the first hand accounts of responding staff. The incident reports I authored were the product of this investigation and accurately reflected my opinion as to the conclusions determined by the investigation.

4.    While I wrote the incident reports (and the re-write of the March 1, 2000, Fighting charge, I did not conduct the DHO hearings and conclude for disciplinary purposes that the plaintiff committed the prohibited acts for which he was charged. As the SIS Lieutenant, I did not have the authority to place the plaintiff on Disciplinary Segregation or to take his good time.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.

Jacqueline M. Morin
Captain
Federal Correctional Institution
Butner, North Carolina

12-1-03
Date



EXHIBIT
4

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Douglas Thornton,    )
  Plaintiff    )
        )
v.    )    No. 1:CV-00-1590
        )
Associate Warden Lindsay, etal    )
  Defendants    )
        )

## DECLARATION OF L. CUNNINGHAM

I, L. Cunningham, hereby state:

1.    I am presently employed by the Federal Bureau of Prisons at the United States Penitentiary (USP) at Lewisburg, Pennsylvania.. As part of my duties, I have access to inmate records and files, as well as the Bureau of Prisons computerized SENTRY system. I am familiar with the above referenced case in which inmate Thornton, Reg. No. 37461-118, complains that he was assaulted by "unknown officers" in the Special Housing Unit and was "hit many times in the back of my head and other parts of my body and the dining room"; that false incident reports were filed against him; and that the Disciplinary Hearing Officer made an "untrue statement, calling me a homosexual".

2.    The Bureau of Prisons has a three level administrative remedy process which is a method by which an inmate may seek formal review of a complaint related to any aspect of his confinement if less formal procedures have not resolved the problem. The procedure is codified at 28 C.F.R.§ 542.10 et seq. This process involves the filing of a request for administrative relief (BP-9) to the Warden of the institution where the inmate is confined. In the event the inmate is dissatisfied with the Warden's response, he may file an appeal (BP-10) to the Regional Director. The final step in the administrative remedy process is an appeal to the General Counsel (BP-11). See 28 C.F.R. Part 542, subpart B. A decision by the Bureau of Prisons is not final, and hence, not reviewable until relief has been denied by the General Counsel's Office. 28 C.F.R. 542.15.

3.    Appeals of DHO actions are one of the few exceptions to the Bureau's administrative remedy process, which are filed directly to the Regional Counsel's Office, and thus, not reviewed at the institution level. 28 C.F.R. §541.19.

4.    Inmate Thornton appealed his May 9, 2000, DHO hearing for Fighting to the Northeast Regional Office. On July 6, 2000, the Northeast Regional Office granted his appeal to

the extent he was provided with a re-write and rehearing of the incident report for the March 1, 2000, "Fighting" charge. Thornton properly filed a further appeal of this situation with the Central Office, even though his Regional level request had been properly granted. In the Central Office's response, on July 26, 2000, the Regional decision to offer the inmate a rehearing was upheld.

5. The July 26, 2000, Central Office response clearly informed inmate Thornton that if he wished to appeal the July 18, 2000, rehearing of the Fighting charge, he must "reinstate any contentions you have through the submission of a Regional Administrative Remedy Appeal (BP-10) to the Regional Director. Inmate Thornton failed to file any new appeal of the July 18, 2000, DHO rehearing on the fighting charge.

6. Inmate Thornton did file a Regional Office level appeal on the June 14, 2000, DHO hearing on the Assault/Conduct which Disrupts charge, arising out of the dining room incident. The request for remedy was denied by the Region on July 7, 2000. Inmate Thornton failed to appeal that denial to the Central Office. Therefore, the inmate failed to exhaust his available administrative remedies on both the Fighting and Assault/Conduct which Disrupts incident reports, or any other specific allegations against DHO Emory.

7. Inmate Thornton failed to file any requests for administrative remedy regarding defendant Morin fabricating incident reports, defendant Lindsay and his injured finger, or any allegations regarding being assaulted in the Special Housing Unit.

8. The documents attached to this declaration are true and accurate copies.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is true and accurate to the best of my knowledge.

_____          12/16/03
V. Cunningham                  Date
Supervisory Attorney
United States Penitentiary
Lewisburg, PA

7

THORNTON, Douglas
Reg. No.  37461-118
Appeal No.  214286-R1
Page One

---

### Part B - Response

You appeal the May 9, 2000 decision of the Discipline Hearing Officer (DHO) at USP Lewisburg, finding that you committed the prohibited act of Fighting, Code 201, Incident Report No. 772556.  You contend staff are lying because you never admitted to fighting, you didn't receive a detention order, and you were taking a strong medication at the time.  You seek to have the disciplinary action expunged.

The record reveals you may not have had adequate notice of the charge.  Accordingly, this disciplinary action is being remanded to be rewritten and reheard.  You will be notified of the time and date for the new hearing.  To the extent noted, your appeal is partially granted.

Date: July 6, 2000

DAVID M. RARDIN
Regional Director

Administrative Remedy No. 214286-A1
Part B - Response

You appeal the DHO's decision of May 9, 2000, Fighting, Code 201, and the Regional Director's decision to remand your case back to the institution for a rehearing.

We concur with the Regional Director's decision to remand Incident Report No. 772556 back to the institution for a rehearing.  The case was remanded back to the institution to be rewritten and reheard.  Records indicate that the incident report was reheard on July 18, 2000 and you were sanctioned.  If you wish to appeal the rehearing decision, you should reinstate any contentions you have through the submission of a Regional Administrative Remedy Appeal (BP-10) to the Regional Director. This response is provided for informational purposes only.

July 26, 2000
Date

Harrell Watts, Administrator
National Inmate Appeals

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS HENRY THORNTON,            :
     Plaintiff        : No. 1:CV-00-1590
            :
     v.               : (Kane, J.)
            :
MR. LINDSEY, Associate Warden,    :
et al.,                           : Filed Electronically
     Defendants       :

CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on December 16, 2003, she served a copy of the attached

**EXHIBITS IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Douglas Henry Thornton
1014 David Hill Avenue
Baltimore, MD  21213

         s/ Michele E. Lincalis
         MICHELE E. LINCALIS
         Paralegal Specialist

2